UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRANDON KENTRELL WILSON,

    Defendant.
_____/

Case No. 1:17-cr-178

HON. JANET T. NEFF

## **OPINION**

This case is before the Court on Defendant's Motion to Suppress (ECF No. 69), in which he seeks to suppress evidence seized pursuant to a search warrant. Because the Motion can be decided on the parties' submissions, no evidentiary hearing is necessary. *See United States v. Lawhorn*, 467 F. App'x 493, 495 (6th Cir. 2012) (challenges to the existence of probable cause, including the issue of staleness, are questions of law, which can be resolved without an evidentiary hearing). For the reasons that follow, the Court denies the Motion to Suppress.

### I. BACKGROUND

On November 18, 2016, Detective Danny Wills, a narcotics detective assigned to the Metropolitan Enforcement Team (MET), made application to a state magistrate judge for the issuance of a search warrant to search one home in a duplex, 2988 Burlingame Avenue, SW, Wyoming, Michigan, and the person of Defendant Brandon Kentrell Wilson, for evidence of drug trafficking and controlled substances. The warrant application was based on Wills' supporting

affidavit of controlled drug buys from Defendant and related activity of Defendant coming from and returning to the residence at 2988 Burlingame Avenue (ECF No. 69 at PageID.172-175).

The magistrate judge issued the search warrant, and it was executed that same day (ECF No. 69 at PageID.170-171, 176-177.) The warrant authorized the seizure of records indicating the trafficking of controlled substances, including telephone records, financial records, photographs, electronic records, occupancy records, property records, drug and tax records; "[a]ny and all quantities of controlled substances"; "[a]ny quantities of money tending to establish the illicit act of selling drugs and any other controlled substance"; and any firearms and ammunition used for the protection of controlled substances or such business (*id.* at PageID. 170).

The evidence seized in the search included over $1,300 in cash, multiple quantities of marijuana, a "white container with suspected heroin and cocaine," multiple scales, plastic baggies with "heroin residue," other packaging items, "misc. papers," a .20 gauge shotgun, and a cell phone (ECF No. 69 at PageID.176-77). Defendant now seeks suppression of all evidence obtained in the search on the grounds that the affidavit was insufficient and the information in the application was stale.[1]

## II. LEGAL STANDARDS

The Fourth Amendment to the United States Constitution states that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation … ." U.S. Const. amend. IV. The Supreme Court has defined probable cause in this context as "a fair probability that contraband

---

[1] Defendant was initially charged in state court, based on the same evidence found in the November 18, 2017 search, where he filed a motion to suppress on the second of the two grounds now raised, i.e., that the information in the search warrant affidavit was stale. The state court denied the motion to suppress. The state charges were subsequently dismissed in favor of federal prosecution.

or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The duty of a magistrate reviewing a search warrant application is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, … there is fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. This determination is limited to the contents (the "four corners") of the affidavit itself. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). It is to be made on the basis of the "'totality of the circumstances … rather than a line-by-line scrutiny.'" *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003) (quotations and citations omitted).

Where the magistrate's determination of probable cause is being challenged, "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see also Gates*, 462 U.S. at 238. "[S]o long as the magistrate had a 'substantial basis for … conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (alterations in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "'A magistrate's determination of probable cause is afforded great deference by the reviewing court,' and should only be reversed if arbitrarily made." *Johnson*, 351 F.3d at 258 (quoting *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)); *see also United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013).

"[C]ourts should not invalidate [] warrant[s] by interpreting [] affidavit[s] in a hypertechnical, rather than a commonsense, manner." *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

## III. ANALYSIS

Defendant advances two challenges to the search warrant: (1) the search warrant application lacked probable cause to conclude that contraband or evidence of a crime would be found *at 2988 Burlingame*; and (2) the information in the affidavit was stale at the time the application was presented to the magistrate judge.

### A. Nexus

Contrary to Defendant's argument, the content of the search warrant affidavit established a sufficient nexus between the illegal activity and the Burlingame residence. The search warrant affidavit stated, in pertinent part:

> In October 2016, C/I [confidential informant] #26676 advised your affiant [Detective Wills] of a subject who is involved in heroin trafficking in the Grand Rapids area. During the initial briefing the C/I stated the subject drives a gray or black Chevrolet Impala bearing Michigan DGF8771. The C/I confirmed the identity of Brandon Kentrell Wilson through a picture located in SOS records. C/I #26676 is a credible and reliable informant that has made three or more purchases of illegal substances which field tested positive for the presence of illegal controlled substances.
>
> On 10/18/16, C/I #26676 contacted Brandon Wilson and arrangements were made to meet at the Swiss Valley Apartment complex to purchase a quantity of heroin. After arriving at the Swiss Valley Apartment complex surveillance officers observed a B/M, later identified as Brandon Kentrell Wilson exit 2988 Burlingame SW and leave the area walking towards the Swiss Valley Apartment complex. Wilson met with the C/I and delivered a quantity of heroin (later field tested positive as heroin). The C/I gave Wilson pre-recorded MET funds. After the sale of the heroin to the C/I Wilson walked directly back to the residence at 2988 Burlingame SW and enter[ed] the residence through the front door.
>
> On 11/1/16 your affiant was conducting surveillance at 2988 Burlingham SW. During that time your affiant observed a 2014 Chevrolet Impala bearing Michigan license DGF8771 leave the residence. Your affiant followed the vehicle to Rogers Plaza in the city of Wyoming. The suspect vehicle, believed to be driven by Wilson, met with a maroon 2009 Saturn Aura bearing Michigan license BGB412. That vehicle was being driven by a subject your affiant identified as another drug

trafficker in the Grand Rapids area. The subjects met for a short period of time which is consistent with an open air drug transaction.

On 11/1/16 the C/I #26676 contacted Brandon Wilson and made arrangements to meet at the Swiss Valley Apartment complex to purchase a quantity of heroin. After arriving at the Swiss Valley Apartment complex surveillance officers observed a B/M, later identified as Brandon Kentrell Wilson, exit 2988 Burlingame SW. Wilson met with the C/I delivered a quantity of heroin (later field tested positive as heroin). The C/I gave Wilson pre-recorded MET funds. After the sale of the heroin to the C/I Wilson was observed walking back to the residence at 2988 Burlingame SW and enter[ed] the residence through the front door.

On 11/10/16 C/I #26676 contacted Brandon Wilson and made arrangements to meet at the Swiss Valley Apartment complex to purchase a quantity of heroin. After arriving at the Swiss Valley Apartment complex surveillance officers observed a B/M exit 2988 Burlingame and leave in a black 2013 Chevrolet Equinox bearing Michigan license CHL7073. The vehicle immediately met with the C/I and delivered a quantity of heroin (later field tested positive as heroin). The C/I gave Wilson pre-recorded MET funds. After the sale of the heroin to the C/I Wilson drove the Chevrolet Equinox and parked in the driveway of 2988 Burlingame SW.

The 2013 Chevrolet Equinox bearing Michigan license CHL7073 and the 2014 Chevrolet Impala bearing Michigan license DGF8771 are registered to Lenika Rashon Bryant at 2988 Burlingame SW.

(ECF No. 69 at PageID.173-174).

The affidavit thereafter stated that Brandon Kentrell Wilson has the following drug conviction history, listing five convictions from 2002 to 2015 for delivery/manufacture of controlled substances, and possession/use of controlled substances (ECF No. 69 at PageID.174-175.

A search warrant affidavit "must indicate a nexus between the place to be searched and the evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items." *United States v. Hawkins*, 278 F. App'x 629, 634 (6th Cir. 2008). The details of the above affidavit establish a sufficient nexus between the 2988

5

Burlingame residence and the evidence of the alleged illegal drug activity. The police officers observed Defendant leaving the residence, walking to meet the confidential informant after arranging to sell the C/I drugs, and then returning to the same Burlingame residence. *See, e.g., United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) ("Commission of a drug transaction outside of a house and one participant's walking back into the house, as observed in this case, plainly demonstrated a sufficient nexus with the house."). Here, similar activity occurred on multiple occasions, which, as the Government argues, was more than enough to provide a substantial basis for issuing the search warrant. *See id.* at 350.

These details, along with the additional supporting and corroborating statements in the affidavit excerpts quoted above, provide ample connection between Defendant's activity and the Burlingame residence. This includes information about Defendant's involvement in drug activity from a "credible and reliable" C/I (ECF No. 69 at PageID.173), and officers' observations of other apparent drug activity involving Defendant and specific vehicles registered with the Burlingame address (*id.* at PageID.173-174).

Defendant focuses on the lack of specific statements in Wills' affidavit to support the search warrant. Defendant asserts that the affidavit contains no information that the C/I possessed any personal knowledge that any drugs were in the residence at 2988 Burlingame. And "[n]either the informant nor the affiant provided any personal knowledge that narcotics were ever present in the house" (ECF No. 69 at PageID.158). Further, there was no information in the affidavit that Defendant owned or leased the residence; no controlled purchases were completed at the Burlingame residence; there was no information that the C/I was ever present inside 2988 Burlingame; nor did the C/I provide any information that evidence relating to drug trafficking would be found at 2988 Burlingame SW (*id.* at PageID.158-159).

6

As the Government points out, the lack of such particular statements are not fatal to the legal sufficiency of the search warrant affidavit or probable cause. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Accordingly, the rule of statutory construction relied on by Defendant, "*expressio unius est exclusion aletrius*" (ECF No. 69 at PageID.160-161),[2] has no application to the review here.

The Court declines to engage in such impermissible hypertechnical or line-by-line construction of the search warrant affidavit. *See Gates*, 462 U.S. at 236 ("'courts should not invalidate … warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner'" (quoting *Ventresca*, 380 U.S. at 109)); *see also Johnson*, 351 F.3d at 258 (the probable cause determination must be made on the basis of the "'totality of the circumstances … rather than a line-by-line scrutiny'") (citation omitted). "Probable cause deals with … the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 241.

A common sense reading of the affidavit indicates that on the three occasions Defendant left 2988 Burlingame to conduct the pre-arranged drug sale with the C/I (10/18/17, 11/1/17, 11/10/17), officers observed Defendant leave the Burlingame residence and walk to the Swiss Valley Apartment complex, then return to the 2988 Burlingame residence after the sale. Although Defendant complains that the affidavit fails to state the location of the Swiss Valley Apartment complex, the sequence of events observed by the officers directly connects Defendant's drug activity to the Burlingame residence.

---

[2] Defendant contends that under this doctrine, Wills' inclusion of particular language in one section of the affidavit but omission in another, can be applied to infer that the officers were unsure of Defendant's whereabouts before the controlled purchase, or even where the controlled purchase took place.

7

The affidavit established a sufficient nexus to the property to be searched. There was ample information in the affidavit to establish probable cause that the evidence sought would be found at the Burlingame residence.

**B. Staleness**

Defendant also argues that "[t]he information in the application was stale and no good reason was provided as to the eight day delay in the application for the warrant" (ECF No. 69 at PageID.162). The Court finds the record and the authority to the contrary.

Whether evidence is stale must be determined based on the circumstances of each case. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). Courts consider four factors in reviewing staleness claims:

1. the character of the crime (chance encounter in the night or regenerating conspiracy?);

2. the criminal (nomadic or entrenched?);

3. the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?); and

4. the place to be searched (mere criminal forum or secure operational base?).

*United States v. Burney*, 778 F.3d 536, 540-41 (6th Cir. 2015) (citing *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)); *see also United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir. 2003). However, "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *Greene*, 250 F.3d at 481.

Defendant argues that a review of the above four factors militates in favor of finding the evidence stale because the application was made eight days after the last controlled purchase of easily perishable times, i.e., controlled substances. Defendant asserts that at most there was
8

evidence of three controlled purchases of an unknown quantity of heroin at an unknown location within the Swiss Valley Apartment complex; there was no statement regarding an ongoing, enduring criminal enterprise.

Looking to the staleness factors, the Court finds the information supporting the warrant application was not stale. Here, the multiple, controlled drug purchases, and the surrounding activities indicate ongoing criminal activity. Defendant was not nomadic; all the activity was connected to 2988 Burlingame. And while controlled substances themselves can be viewed as perishable, here, there was evidence of Defendant's repeated sales of drugs under similar arrangements with the C/I, indicating, as the state court concluded, that evidence beyond the mere drugs themselves, related to continuing drug sales, would likely be found at 2988 Burlingame. *See Burney*, 778 F.3d at 541 (such evidence "is not readily consumable and is 'of enduring utility to its holder'").

Finally, as argued by the Government, the eight day time lapse between the last controlled buy and the warrant request reflects no staleness concerns, given the ongoing drug activities and Defendant's repeated responses to the C/I's purchase requests. *See, e.g., United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017) (no staleness where multiple and repeated activities were observed less than seven weeks prior); *United States v. Howell*, No. 1:15-cr-120, 2016 WL 4435356, at *10 (W.D. Mich. Aug. 23, 2016) (drug deal within seven days of the date of the affidavit).

### C. Good Faith Exception

Even if, contrary to the Court's above conclusions, Defendant's challenges to the search warrant were valid, the Court is fully persuaded that the good faith exception to the exclusionary rule would preclude suppression of the evidence. *See United States v. Leon*, 468 U.S. 897, 905

(1984) (adopting an exception to the exclusionary rule where the evidence is "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective").

Contrary to Defendant's argument, the affidavit in this case is far from an objectionable "bare bones" affidavit. *See Gates*, 462 U.S. at 239; *United States v. McPhearson*, 469 F.3d 518, 525-26 (6th Cir. 2006). There was a sufficient nexus between the purported drug transactions and the Burlingame residence, and the eight-day time lapse raises no staleness concerns. Thus, a "reasonably well-trained officer would [not] have known that the search was illegal despite the magistrate's authorization." *See Leon*, 468 U.S. at 922 n.23. The "good faith" exception applies.

## IV. CONCLUSION

Having found Defendant's challenges to the affidavit and search warrant without merit, the Court denies Defendant's Motion to Suppress. An Order will be entered consistent with this Opinion.

Dated: February 26, 2018

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge